UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE BENARD WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>C. ESSEX, et al.,<br><br>Defendants. | No. 2:12-cv-03054-DAD-DB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND SETTING CASE SCHEDULE<br><br>(Doc. No. 176) |

This matter is before the court on the motion to reopen discovery filed on behalf of plaintiff on September 7, 2022. (Doc. No. 176.) Therein, plaintiff requests that expert discovery and limited fact discovery be reopened in light of the Ninth Circuit's decision on plaintiff's direct appeal of the judgment entered in favor of defendants Dr. Craig Essex and Dr. Carol Banyas following a jury trial in this case. (*Id.* at 6–9.) Specifically, on October 21, 2021, the Ninth Circuit reversed this court's judgment and remanded this case for a new trial because this "court's denial of [plaintiff's] request for the appointment of an expert while allowing the [d]efendant [d]octors to testify as experts, constituted plain error." (Doc. No. 167 at 4–5.)[1] Defendants do not oppose plaintiff's motion as to the reopening of expert discovery, but they oppose the reopening of fact discovery. (Doc. Nos. 179 at 1, 7; 181 at 15–16, 28.) On October 11, 2022,

---

[1] On August 25, 2022, this case was reassigned to the undersigned. (Doc. No. 175.)

1

plaintiff's motion was taken under submission on the papers. (Doc. No. 184.) For the reasons explained below, plaintiff's motion to reopen discovery will be granted.

## BACKGROUND

On December 20, 2012, plaintiff Tracye Benard Washington, a state prisoner who was proceeding *pro se*, filed the complaint initiating this civil rights action brought pursuant to 42 U.S.C. § 1983 against defendants Dr. Essex and Dr. Banyas. (Doc. No. 1.) In his complaint, plaintiff alleges that defendants violated his constitutional right to due process under the Fourteenth Amendment by involuntarily injecting him with psychotropic medication on two separate occasions while he was incarcerated at the California Medical Facility's Department of State Hospitals–Vacaville's Acute Psychiatric Program (the "Facility"). (*Id.*)

For the next six years, plaintiff prosecuted this case *pro se*, including propounding some written discovery requests on defendants, successfully opposing summary judgment, and representing himself in a four-day trial conducted before District Judge John A. Mendez that began on August 20, 2018.[2] (*See* Doc. Nos. 27, 31, 141–144.) The jury returned a verdict in favor of defendants, and on August 27, 2018, judgment was entered in accordance with the verdict. (Doc. Nos. 148–150.) Plaintiff filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), which was denied on December 11, 2018. (Doc. Nos. 154, 159.) Plaintiff thereafter appealed the jury's verdict and the court's denial of his Rule 50(b) motion to the Ninth Circuit. (Doc. No. 161.)

On July 22, 2020, the Ninth Circuit appointed *pro bono* counsel to represent plaintiff in his direct appeal. (*See* Doc. No. 176 at 7.) On October 21, 2021, the Ninth Circuit issued its decision on plaintiff's appeal, "conclud[ing] that the district court committed reversible error" when it denied plaintiff's "request for the appointment of an expert while allowing the Defendant Doctors to testify as experts." (Doc. No. 167 at 2, 4–5.) The Ninth Circuit summarized "the unique facts of this case" as follows:

---

[2] Over the course of this litigation, plaintiff had filed six motions requesting that the court appoint counsel to represent him in this action, and the court denied all of those requests. (Doc. Nos. 7, 26, 75, 86, 94, 102.)

2

> The district court initially denied without prejudice Washington's request for appointment of an expert because Washington mistakenly requested appointment of an expert "to assist him at trial," rather than a neutral expert. Nevertheless, the district court assured the parties that it would appoint a neutral expert "should the court later determine that a neutral expert is necessary."
>
> At trial, the district court determined that no expert testimony was necessary to help the jury decide whether the Defendant Doctors violated Washington's constitutional rights when they involuntarily medicated him. Rather, the district court characterized the action as a "credibility case" whereby the jury could "hear . . . Washington's version and [the Defendant Doctors'] version" of events.
>
> The district court reasoned:
>
>> [I]t is a he said/she said case. I mean, it's clear it's a credibility case. And experts don't add anything and experts can't testify . . . All they can do is take what [Defendant Doctors] say and render an opinion, which doesn't assist the jury in this case. It's clearly a credibility case here . . . And I'm not going to waste the jury's time or the Court's time with an expert that's not going to add anything to the issues in this case. It's a very simple, straightforward case. And I'm not going to try to complicate it with experts that don't add anything and may have to shade over into legal opinions. . . . I'm not going to allow the experts to testify.
>
> Having provided these extensive remarks regarding why expert testimony was unnecessary, the district court immediately thereafter designated the Defendant Doctors as experts, without revisiting its denial of Washington's request for the appointment of an expert. Defendant Doctors proceeded to testify as experts regarding: 1) Washington's mental condition; 2) their reliance on Washington's history of violence despite the substantial passage of time; 3) why Washington's actions constituted a "sudden and marked change" in his mental condition; and 4) why the circumstances constituted an "emergency" warranting involuntary medication.

(*Id.* at 2–4.) Thus, the Ninth Circuit "reverse[d] the district court's judgment, and remand[ed] for a new trial with a neutral expert appointed by the court, or testimony from the Defendant Doctors only as fact witnesses." (*Id.* at 5.) The mandate from the Ninth Circuit was issued on November 12, 2021. (Doc. No. 168.)

On November 24, 2021, plaintiff's *pro bono* counsel filed their notice of appearance as counsel for plaintiff in this court on remand. (Doc. No. 172.) The parties met and conferred in June and July 2022 regarding plaintiff's counsel's request that defendants provide copies of all

3

the discovery in this case, which defendants provided. (Doc. No. 176-1 at ¶¶ 2–7.)[3]  In August 2022, the parties met and conferred further regarding several purported discovery deficiencies that plaintiff's counsel had identified and regarding plaintiff's intent to move to reopen discovery. (*Id.* at ¶¶ 7–8.)  Plaintiff's counsel also informed defense counsel that plaintiff was in the process of retaining his own medical expert to testify at trial. (*Id.* at ¶ 7.)

On September 7, 2022, plaintiff filed the pending motion to reopen both fact and expert discovery. (Doc. No. 176.)  On September 21, 2022, defendant Banyas filed an opposition to the pending motion, opposing only plaintiff's request to reopen fact discovery. (Doc. No. 179.)  On September 23, 2022, defendant Essex filed an opposition to the pending motion, similarly opposing only plaintiff's request to reopen fact discovery. (Doc. No. 181.)[4]  Defendants do not oppose the reopening of expert discovery. (Doc. Nos. 179 at 1, 7; 181 at 15–16, 28.)  On October 3, 2022, plaintiff filed a reply in support of his motion to reopen discovery. (Doc. No. 182.)

**LEGAL STANDARD**

"The decision to modify a scheduling order is within the broad discretion of the district court." *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1030 (E.D. Cal. 2002).  Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a case "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Thus, when a party seeks to modify the scheduling order, including the reopening of discovery, that party must first show "good cause." *See Zivkovic v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir. 1992).  In *Johnson*, the Ninth Circuit explained that

---

[3] Due to District Judge John A. Mendez taking senior status, this case was reassigned to Chief District Judge Kimberly J. Mueller on July 27, 2022. (Doc. No. 173.)  On August 2, 2022, the court set a status conference for October 6, 2022 and directed the parties to file a joint status report. (Doc. Nos. 174.)  However, on August 25, 2022, this case was reassigned to the undersigned, and the status conference was vacated, to be reset if necessary after consideration of the parties' joint status report, which the parties filed on September 22, 2022. (Doc. Nos. 175, 177, 180.)

[4] The court declines plaintiff's suggestion that the court should disregard defendant Essex's opposition as untimely filed. (Doc. No. 182 at 6.)  The court will consider defendant Essex's arguments in opposition to the pending motion even though defendant Essex filed her opposition brief two days after the filing deadline.

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

975 F.2d at 609 (internal quotation marks and citations omitted); *see also* 6A Wright & Miller, et al., Fed. Prac. & Proc. § 1522.2 (3d ed. 2018) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

District courts in the Ninth Circuit consider the following six factors when ruling on a motion to modify a scheduling order to reopen discovery:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft*, 63 F.3d 1512, 1526 (9th Cir. 1995), *vac'd on other grounds*, 520 U.S. 939 (1997)).

**ANALYSIS**

In light of plaintiff's decision to retain and designate an expert of his own to testify at the retrial of this action on remand, good cause has been shown to reopen expert discovery, and the court will therefore grant plaintiff's unopposed request to reopen *expert* discovery. The only remaining question is whether plaintiff has shown good cause to modify the scheduling order to reopen *fact* discovery for the limited purpose of allowing plaintiff to propound written discovery requests, requests for production of documents, and conduct depositions, as specified in plaintiff's motion. Specifically, plaintiff seeks to propound seven interrogatories and seven requests for production of documents on each defendant, depose no more than ten witnesses, and subpoena

/////

the warden at the Facility for production of documents. (*See* Doc. Nos. 176-20–176-24; 182 at 7.)

**A.     Summary of the Parties' Respective Arguments**

In the pending motion, plaintiff argues that good cause exists to reopen limited fact discovery for several reasons. First, plaintiff emphasizes that he did not have legal counsel during the original discovery phase of this litigation, and courts often reopen discovery where *pro se* parties obtain *pro bono* counsel after discovery has closed. (Doc. No. 176 at 10–12) (citing cases).[5] Second, plaintiff asserts that due to his "lack of legal training and guidance," and despite his diligent efforts to conduct discovery, he was unable to discover relevant evidence, including a complete set of his medical files along with defendants' notes on the dates they involuntarily medicated him, as well as evidence bearing on defendants' credibility. (*Id.* at 10–11.) For example, plaintiff contends that because he lacked counsel and legal training, he was not able to craft discovery requests to overcome defendants' boilerplate objections. (*Id.* at 14.) Third, according to plaintiff, reopening limited fact discovery as he has requested is necessary for him to

---

[5]  As explained by the court in one of the decisions cited by plaintiff:

> Courts have permitted the reopening of discovery where a state prisoner proceeding *pro se* moved to reopen discovery following the appointment or retention of counsel after the discovery cutoff date. In so doing, courts have considered not only the diligence of the prisoner in pursuing discovery, but also the necessity of additional discovery for trial preparation and for resolution of the matter on the merits. *See, e.g., Draper v. Rosario*, 2013 WL 6198945, at *1–2 (E.D. Cal. Nov. 27, 2013) (court permitted pro se prisoner to reopen discovery when he acquired *pro bono* counsel after the discovery cut-off date; counsel alone did not entitle plaintiff to additional discovery, but limited additional discovery would serve the ultimate resolution of case on the merits); *Woodard v. City of Menlo Park*, 2012 WL 2119278, at *1–2 (N.D. Cal. June 11, 2012) (discovery reopened for *pro se* plaintiff who obtained counsel after the discovery cut-off date, noting that additional fact discovery would serve the interest of justice and the public policy of adjudicating cases on the merits); *Henderson v. Peterson*, 2011 WL 441206, at *2 (N.D. Cal. Feb. 3, 2011) (court noted that despite pro se plaintiff's discovery efforts, he was unable to gain access to evidence that he might have obtained had he been represented by counsel).

*Calloway v. Scribner*, No. 1:05-cv-01284-BAM PC, 2014 WL 1317608, at *1 (E.D. Cal. Mar. 27, 2014).

6

sufficiently prosecute his claims on the merits at the new trial. (*Id.* at 11.) Fourth, plaintiff contends that reopening discovery to allow plaintiff to conduct depositions will also serve to "streamline the central issues and the presentation of evidence at trial." (*Id.*) In addition, plaintiff argues that the balance of the factors that courts in the Ninth Circuit consider weigh in favor of granting his motion to reopen fact discovery. (*Id.* at 13–16.) According to plaintiff, of the six factors articulated above, only the second factor—that the request is opposed—weighs against the granting of plaintiff's motion.

In their oppositions, defendants argue that plaintiff has not shown good cause to modify the scheduling order to reopen fact discovery. (Doc. Nos. 179, 181.) Defendant Banyas urges the court to deny plaintiff's motion to reopen fact discovery because the appearance of counsel on plaintiff's behalf does not constitute good cause, plaintiff conducted extensive discovery and was not hampered by his *pro se* status in doing so, and the proposed additional discovery requests are not likely to lead to admissible evidence. (Doc. No. 179 at 4–6.) Defendant Essex characterizes plaintiff's motion as a request for "a broad and expensive discovery do-over," including unlimited numbers of interrogatories, requests for production, and depositions. (Doc. No. 181 at 14.) Based on this characterization and relying mainly on out-of-circuit authority for support, defendant Essex argues that consideration of the "good cause" factors disfavor reopening discovery here and doing so would be "fruitless." (*Id.* at 17–27.)

In his reply, plaintiff notes that defendant Banyas' focus on whether the additional discovery would lead to "admissible" evidence is misplaced because that factor is the "likelihood that the discovery will lead to *relevant* evidence." (Doc. No. 182 at 20) (citing *City of Pomona*, 866 F.3d at 1066) (emphasis added). Plaintiff also notes that defendant Essex relies "almost entirely on a litany of non-binding and factually distinct cases from outside of this Circuit." (*Id.* at 6.) In addition, according to plaintiff, defendant Essex misrepresents a Ninth Circuit decision as standing for the general proposition that district courts need not reopen discovery where doing so would be "fruitless"—purportedly ascribing a "fruitless" standard for all motions to reopen discovery. (*Id.*) But in that case, the Ninth Circuit addressed the appropriateness of summary judgment and held that "summary judgment in the face of requests for additional discovery is

7

appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim." (*Id.*) (quoting *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004)).

**B.      Consideration of the Ninth Circuit's Good Cause Factors**

      1.      <u>Whether Trial is Imminent</u>

The court has not yet set a trial date following remand of this action for a new trial. Defendant Essex acknowledges that a trial date has not yet been set, but nevertheless argues that this factor weighs in his favor because there would be a corresponding delay if discovery were reopened. (Doc. No. 181 at 27.) However, defendant Essex does not oppose the reopening of expert discovery, which would also result in the setting of a later trial date. Defendant Banyas did not address this factor in her opposition but has implicitly conceded that trial is not imminent because she stated in the parties' joint status report that she is not available for a trial in this case until December 2023. (*See* Doc. No. 180 at 3.) The court agrees with plaintiff that trial in this case is not imminent.

Accordingly, consideration of this factor weighs in favor of granting plaintiff's motion to reopen discovery.

      2.      <u>Whether the Request is Opposed</u>

As noted, both defendants oppose plaintiff's motion to the extent he seeks to reopen fact discovery. Accordingly, consideration of this factor weighs against the granting of plaintiff's motion.

      3.      <u>Whether Defendants would be Prejudiced</u>

Plaintiff argues that defendants would not be unduly prejudiced by the reopening of limited fact discovery because that discovery "almost certainly would have been done long ago had [plaintiff] had counsel." (Doc. No. 176 at 13.) In other words, the limited discovery that defendants would be subjected to now, if the court were to grant the pending motion, is not prejudicial to defendants because that discovery would have been sought earlier if plaintiff had the benefit of counsel, who would have had the skill and training to overcome defendants' boilerplate objections to plaintiff's *pro se* discovery requests. Plaintiff stresses that reopening discovery under the circumstances of this case would not be unfair to defendants, but not doing so

would be unfair to plaintiff because:

> [i]n a case that largely hinges on the credibility of the witnesses, Mr. Washington's ability to receive a fair trial on remand is predicated on whether Mr. Washington is permitted to conduct critical discovery concerning his involuntary administrations with psychotropic drugs on March 18 and April 4, 2012—discovery that counsel almost certainly would have conducted during the time initially allotted for discovery, had Mr. Washington been represented. Mr. Washington should be permitted to conduct this essential discovery now with the assistance of counsel, to facilitate resolution of this case on the merits rather than on an incomplete, one-sided record.

(Doc. No. 176 at 6–7.)

Defendant Banyas argues in conclusory fashion that reopening discovery would be prejudicial to defendants, who already participated in discovery and the original trial, by requiring them to expend further time and resources and have their depositions taken. (Doc. No. 179 at 7.) This argument rings hollow, however, because defendant Banyas has agreed that expert discovery should be reopened, and as a testifying expert, her deposition will likely be taken by plaintiff's counsel in any event. The court is similarly not persuaded by defendant Essex's argument that he would be substantially prejudiced because he has already litigated this case for many years, and he would be forced to incur additional costs. (Doc. No. 181 at 26–27.) But this is true regardless of whether the court grants plaintiff's pending motion. The Ninth Circuit has ordered that plaintiff shall receive a new trial in this case, and that will inherently lead to defendants incurring additional costs, especially given that expert discovery will be reopened. In this context, the court is not convinced that the additional costs defendants will incur if fact discovery is reopened constitutes undue prejudice to defendants. *See Acinelli v. Torres*, No. 13-cv-1371-TJH-PLA, 2020 WL 6712255, at *2 (C.D. Cal. Oct. 27, 2020) (granting the plaintiff's motion to reopen discovery and noting that while the court "certainly understands defendant's frustration at the amount of time that has passed since this action was filed, any prejudice to defendant due to the case being pending for almost seven years does not outweigh plaintiff's right to take defendant's deposition—especially now that plaintiff is represented by counsel").

Accordingly, consideration of this factor weighs in favor of granting plaintiff's motion.

        4.      <u>Whether Plaintiff was Diligent in Obtaining Discovery</u>

Plaintiff argues that he was diligent in timely serving discovery requests on defendants (albeit it, poorly drafted requests), but he maintains that he was unable to overcome defendants' boilerplate objections. (Doc. No. 176 at 14–15.) As a result, he was unable to obtain relevant evidence,[6] and did not able to take a single deposition in this case due to his incarceration and lack of resources. (*Id.*) Defendant Banyas does not address this factor in her opposition brief, but in summarizing the procedural history of this case, she recounts plaintiff's discovery requests and motions. (Doc. No. 179 at 1–2.) Defendant Essex also recounts plaintiff's discovery efforts in his procedural background section, but nevertheless argues that plaintiff has not been diligent because he had "ample opportunity to pursue the fact discovery that his counsel now seeks." (Doc. No. 181 at 12–13, 25.) In his reply, plaintiff contends that defendant Essex's argument misses the point, which is that plaintiff "was not represented by counsel during the allotted fact discovery period, and despite his admirable pursuit of discovery, he was unable to pursue the discovery he now seeks given his incarceration, indigent status, and lack of legal training." (Doc. No. 182 at 16.) The court is persuaded by plaintiff's argument in this regard, as plaintiff's *pro se* discovery efforts are evident in the record and reflect that he was diligent in pursuing discovery to the best of his ability. *See Henderson v. Peterson*, No. 07-cv-2838-SBA-PR, 2011 WL 441206, at *1 (N.D. Cal. Feb. 3, 2011) (granting plaintiff's motion to reopen discovery, in part because

---

[6] In particular, plaintiff explains that he was unable to obtain evidence as to:

> (a) the identity of witnesses with discoverable information regarding the circumstances of Mr. Washington's involuntary medications on March 18 and April 4, 2012, and by extension, the critical discovery those witnesses possessed; (b) the Facility's records regarding the number and frequency of involuntary medications administered on an emergency basis, including those relating to Drs. Essex and Banyas; (c) the Facility's records relating to inmate complaints lodged against Drs. Essex and Banyas; (d) employment records and other similar records other than the Facility's concerning Drs. Essex's and Banyas's employment as psychiatrists and history of administering involuntary medication; (e) the Facility's medical records for Mr. Washington; and (f) any other documents or reports Drs. Essex and Banyas intend to use in support of their defenses.

(Doc. No. 176 at 14.)

10

"[t]here is no indication that Plaintiff—who until recently has been acting *pro se*—has been dilatory in conducting discovery" and "[t]o the contrary, the record shows that he has made numerous attempts, albeit largely unsuccessfully, to obtain discovery from Defendants prior to the appointment of counsel."). The court agrees with plaintiff that he actively pursued discovery by serving requests for production, requests for admissions, and interrogatories on defendants, but he was unable to obtain meaningful evidence bearing on his claims due to his status as a *pro se* inmate, his limited financial resources, and his lack of legal training. For example, plaintiff's inability to take depositions or obtain the missing "portions of his medical files that omitted Dr. Banyas's medical notes on April 4, 2012 (the date she administered Mr. Washington psychotropic medication without his consent)," was not due to his lack of diligence. (*Id.* at 15.)

Accordingly, consideration of this factor also weighs in favor of granting plaintiff's motion.

        5.        <u>The Foreseeability of the Need for Additional Discovery</u>

Given the circumstances described with regard to plaintiff's diligence in pursing discovery, namely his inability to overcome defendants' boilerplate objections and inability to conduct depositions, coupled with the fact that courts often allow plaintiffs to reopen discovery when they later obtain *pro bono* counsel after the close of discovery, plaintiff argues that "it was foreseeable to Defendants that Plaintiff would seek to reopen discovery once he retained *pro bono* counsel." (Doc. No. 182 at 17.) The court agrees. *See Vinzant v. United States*, No. 5:07-cv-00024-VAP-JCR, 2015 WL 13376683, at *4 (C.D. Cal. Aug. 7, 2015) (concluding the foreseeability factor weighed in favor of granting plaintiff's motion to reopen discovery because "[c]ourts often reopen discovery once *pro bono* counsel is retained" and it was therefore "foreseeable to Defendants that Plaintiff would seek to reopen discovery once he retained *pro bono* counsel"); *Calloway*, 2014 WL 1317608, at *1 ("Courts have permitted the reopening of discovery where a state prisoner proceeding *pro se* moved to reopen discovery following the appointment or retention of counsel after the discovery cutoff date."). Moreover, "[t]he Ninth Circuit has warned that district courts err when they 'ignore[] our oft stated commitment to deciding cases on the merits whenever possible, and [hold] a layman working without the aid of

an attorney[] to the same standards to which we hold sophisticated parties acting with the benefit of legal representation.'" *Chavez v. United States*, No. 19-cv-31-DMG-JEM, 2022 WL 16859654, at *6 (C.D. Cal. Aug. 8, 2022) (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)) (granting the formerly *pro se* plaintiff's motion to reopen discovery, noting that "[i]t is true that Plaintiff has had a stroke of luck in securing *pro bono* counsel, an opportunity many incarcerated civil litigants never receive.  But it would be an ironic twist and needless injustice to thwart this opportunity by locking his new counsel into a *pro se* pleading without the benefit of discovery").

Accordingly, consideration of this factor also weighs in favor of granting plaintiff's motion.

6. <u>The Likelihood that the Discovery will Lead to Relevant Evidence</u>

Plaintiff argues that the additional discovery he seeks will lead to relevant evidence because evidence of defendants' "history of administering inmates involuntary medications and testimony from witnesses present at [plaintiff's] involuntary medications will shed light on whether an emergency existed on the days the doctors involuntarily injected [plaintiff] with psychotropic drugs—which is the ultimate question the trial will seek to resolve." (Doc. No. 176 at 16.)  Having considered the proposed requests and plaintiff's arguments with regard to the relevance of those requests, the court agrees that the additional discovery plaintiff seeks is likely to lead to relevant evidence.  Defendants argue that because they both testified at trial and were subject to cross-examination by plaintiff, there is no likelihood that additional discovery will lead to relevant evidence that is not already part of the court's record in this case. (Doc. Nos. 179 at 6; Doc. No. 181 at 21–22.)  This argument is unpersuasive, however, because plaintiff was proceeding *pro se* at trial, and did not have the benefit of counsel to better and more effectively probe defendants' credibility and the existence (or lack thereof) of corroborating evidence.  In addition, the court is not persuaded by defendant Banyas's argument that plaintiff's proposed additional discovery requests would not lead to "admissible" evidence due to application of the Health Insurance Portability and Accountability Act ("HIPAA") and/or other protections and privileges.  (Doc. No. 179 at 6.)  To the extent that defendants believe certain of plaintiff's

12

1 discovery requests improperly seek protected information, defendants may file a discovery
2 motion seeking a protective order, a motion which would be heard by the magistrate judge
3 assigned to this case, consistent with Local Rule 302. *See Henderson*, 2011 WL 441206, at *2
4 (granting motion to reopen discovery and rejecting defendants arguments the reopening discovery
5 would be disruptive, time-consuming, and burdensome, noting that "[t]o the extent that
6 Defendants believe that Plaintiff's discovery requests are improper and unduly burdensome, they
7 may file a motion for protective order before the magistrate judge assigned to oversee discovery
8 disputes in this action").

Accordingly, consideration of this final factor also weighs in favor of granting plaintiff's motion.

In sum, consideration of all but one of the factors weigh in favor of granting plaintiff's motion to reopen fact discovery, specifically to allow plaintiff to propound the additional discovery requests and conduct depositions as requested in his motion. Importantly, plaintiff was clearly diligent in obtaining discovery and consideration of that factor receives the greatest weight. *See Johnson*, 975 F.2d at 609. Thus, the court will grant plaintiff's motion to reopen both expert and limited fact discovery.[7] *See Holmes v. Estock*, No. 16-cv-2458-MMA-BLM, 2022 WL 16541182, at *3 (S.D. Cal. Oct. 28, 2022) (granting the plaintiff's motion to reopen discovery, even though it was opposed, because plaintiff had been diligent and "trial is not imminent, defendant will not be unduly prejudiced by a short additional discovery period, [] the discovery is likely to reveal relevant evidence," and "additional discovery will serve in the ultimate resolution of the case on the merits").

**C.      Case Schedule**

The court has reviewed the parties' joint status report, in which each party proposes their suggested case schedule in the event the court were to grant plaintiff's motion. (Doc. No. 180.)

---

[7] In his opposition to the pending motion, defendant Essex requests that, if the court is inclined to grant plaintiff's motion, the court should likewise allow defendant Essex to conduct additional discovery. (Doc. No. 181 at 28.) Defendant Essex contends that he "too is entitled to an adequate preparation of his defense." (*Id.*) The court rejects defendant Essex's request because he has not filed his own motion to reopen fact discovery for this purpose, nor has he attempted to make the requisite showing of good cause.

13

Having considered the parties' respective proposals, the court will set the following schedule:

- Close of limited fact discovery:  March 10, 2023
- Expert disclosure deadline:  April 10, 2023
- Rebuttal expert disclosure deadline:  May 10, 2023
- Close of expert discovery:  June 9, 2023
- Deadline to file dispositive motions:  July 7, 2023
- Final pretrial conference:  October 3, 2023 at 1:30 p.m.
- Jury trial:  December 4, 2023 at 9:00 a.m.

## CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion to reopen discovery (Doc. No. 176) is granted;

    a. Expert discovery is reopened as to all parties; and

    b. Limited fact discovery is reopened as to plaintiff, as described herein;

2. The court now sets the following case schedule:

| | |
|---|---|
| Close of limited fact discovery | March 10, 2023 |
| Expert disclosure deadline | April 10, 2023 |
| Rebuttal expert disclosure deadline | May 10, 2023 |
| Close of expert discovery | June 9, 2023 |
| Deadline to file dispositive motions | July 7, 2023 |
| Final pretrial conference | October 3, 2023 at 1:30 p.m. by Zoom before District Judge Dale A. Drozd |
| Jury trial | December 4, 2023 at 9:00 a.m. in Courtroom 4 before District Judge Dale A. Drozd |

3. The parties shall file a joint pretrial statement in accordance with Judge Drozd's Standing Order in Civil Actions, which is posted on Judge Drozd's webpage on the court's website; and

4. The parties are advised that the undersigned requires parties to participate in a court-ordered settlement conference before proceeding to trial.  Therefore, prior to

14

the final pretrial conference, the court will refer this case to the assigned magistrate judge for the setting of a settlement conference, unless the parties have already filed a request for a settlement conference. The parties are encouraged to meet and confer and file a request for a settlement conference once they believe a settlement conference would be productive.

IT IS SO ORDERED.

Dated: **December 2, 2022**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE

15